**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SAUER CONSTRUCTION, LLC,

Plaintiff,

v. Case No.: 3:24-cv-943-WWB-PDB

UNITED STRUCTURES OF GEORGIA, LLC, WESTERN SURETY COMPANY and GREAT MIDWEST INSURANCE COMPANY,

Defendants.
_________________________________/

# ORDER

THIS CAUSE is before the Court on Plaintiff Sauer Construction, LLC's ("**Sauer**") Motion for Partial Summary Judgment (Doc. 60), Counterclaim-Defendant Federal Insurance Company's ("**Federal Insurance**") Motion for Summary Judgment (Doc. 61), Defendant Western Surety Company's ("**Western Surety**") Motion for Summary Judgment (Doc. 63), Defendant Great Midwest Insurance Company's ("**Great Midwest**") Motion for Summary Judgment (Doc. 64), and the responses and replies (Doc. Nos. 65–70).[1] For the reasons set forth herein, Great Midwest's Motion will be denied and the remaining Motions will be granted.

---

[1] The Replies (Doc. Nos. 69, 70) filed by Western Surety and Great Midwest fail to comply with this Court's April 2, 2026 Standing Order. In the interests of justice, the Court will consider the filings, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

Additionally, the Court notes that its Electronic Document Filing System reflects a Motion for Summary Judgment (Doc. 62) submitted by United Structures of Georgia, LLC. However, the filing simply contains a copy of Western Surety's Motion for Summary

## I. BACKGROUND

Sauer served as general contractor for the renovation of Army barracks buildings 2273, 2387, and 2389, at Fort Johnson, Louisiana. (Doc. 1, ¶¶ 1, 9–10; DA, ¶¶ 1, 9–10).[2] Sauer and Defendant United Structures of Georgia, LLC ("**United Structures**" or "**United**") entered into one subcontract agreement for work on building 2273 ("**Subcontract 2273**") and one subcontract agreement for work on buildings 2387 and 2389 ("**Subcontract 2387/2389**"; collectively, the "**Subcontracts**"). (Doc. 65-4 at 9–26, 46–63). The Subcontracts required United Structures to furnish and install metal trusses and decking and to bear financial responsibility for its work defects and delays. (*Id.* at 9–12, 14–16, 46–49, 51–53).

Western Surety issued payment and performance bonds guaranteeing United Structures' obligations arising under Subcontract 2273. (Doc. 63-1 at 5–12). Great Midwest issued payment and performance bonds guaranteeing United Structures' obligations arising under Subcontract 2387/2389. (64-1 at 9–14). Federal Insurance issued payment bonds guaranteeing Sauer's obligations on the Subcontracts consistent with the Miller Act, 40 U.S.C. § 3131, *et seq.* (Doc. 61-1 at 9–10; *see also* Doc. 60 at 3; Doc. 65 at 3).

The barracks projects were plagued by delays, and disputes broke out between Sauer and United Structures regarding payments, change orders, site access, quality of

---

Judgment (Doc. 63). Notice of the discrepancy was provided on the docket entry. (*See* Doc. 62). Accordingly, the Motion for Summary Judgment purportedly filed by United Structures will be denied as moot.

[2] The Court distinguishes between paragraphs included in United Structure's Restated Answer and Amended Counterclaim (Doc. 42) by referencing either the Answer ("**DA**") or the Counterclaim ("**DC**").

work, and project timelines. (*See* Doc. 61-2 at 4, 10–11; Doc. 66-2 at 7–8; Doc. 66-4 at 118:3–18, 120:20–121:24, 123:4–24, 126:20–127:21; Doc. 66-5 at 2–3, 8–9, 13; Doc. 68-2 at 8–20). Eventually, United Structures informed Sauer that it would not perform any further work on barracks buildings 2387 and 2389. (Doc. 61-2 at 8; Doc. 61-3 at 3:19–24). The last day on which United Structures performed any labor or supplied any material on the projects was no later than September 9, 2022. (Doc. 61-2 at 4–5; *see also* Doc. 60-3 at 7:24–8:7). Thereafter, Sauer notified United Structures that it would be filing a claim with its sureties "for reimbursement of direct and indirect costs associated with United's failure and refusal to perform" work under the Subcontracts. (Doc. 68-2 at 8). Additionally, United Structures submitted payment bond claims to Federal Insurance. (Doc. 61-2 at 10–11). Federal Insurance, finding that it was unable to resolve what it determined was a bona fide dispute between United and Sauer, did not approve the claims. (Doc. 61-1 at 4–5; Doc. 66-7 at 152–153).

Sauer and United Structures each allege that the other breached the Subcontracts. As relevant to the instant Motions, Sauer also alleges that Western Surety and Great Midwest breached their performance bond agreements. (Doc. 1, ¶¶ 45–57). United Structures alleges counterclaims for breach of payment bond and unjust enrichment against Sauer and Federal Insurance, and additional counterclaims for bad faith attorneys' fees and fraud against Sauer. (DC, ¶¶ 28–50).

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

## III. DISCUSSION

### A. United Structures' Counterclaim for Breach of Payment Bond

Sauer and Federal Insurance separately move for summary judgment on United Structure's Miller Act payment bond claim but raise identical arguments concerning the claim's timeliness. Namely, Sauer and Federal Insurance argue that United Structures' claim is untimely under the Miller Act's one-year limitations provision. United Structures

responds that its claim is timely because the one-year deadline is subject to equitable tolling and estoppel.

The Miller Act "provides that every person who has furnished labor or materials under a contract for which a payment bond under 40 U.S.C. § 3131(b)(2) was issued, but who has not been paid within ninety days of the last day of performance, 'may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.'" *Thomas v. Burkhardt*, 636 F. App'x 992, 995 (11th Cir. 2016) (quoting 40 U.S.C. § 3133(b)(1)). The action "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action."[3] 40 U.S.C. § 3133(b)(4). The relevant parties agree that the last day on which United Structures performed labor or supplied material on the projects was no later than September 9, 2022. This action was initiated two years later, on September 11, 2024.

The parties appear to agree that the Miller Act's limitation provision is subject to equitable tolling in at least some circumstances. The Court notes that the former Fifth Circuit offhandedly described the Miller Act's limitations provision as "jurisdictional" in *United States ex rel. Harvey Gulf International Marine, Inc. v. Maryland Casualty Co.*, a precedential opinion.[4] 573 F.2d 245, 247 (5th Cir. 1978). Jurisdictional requirements

---

[3] Generally, Miller Act claims "must [also] be brought . . . in the United States District Court for any district in which the contract was to be performed and executed." 40 U.S.C. § 3133(b)(3)(B). Here, however, venue is proper pursuant to the Subcontracts' forum selection clauses. (*See* Doc. 65-4 at 23, 60); *In re Fireman's Fund Ins. Cos.*, 588 F.2d 93, 95 (5th Cir. 1979).

[4] Decisions issued by the former Fifth Circuit on or before September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981). In an opinion issued years later, and thus not precedential for present purposes, the Fifth Circuit clarified that the *Harvey Gulf* court's use of "jurisdictional"

"must be raised by courts *sua sponte*, and, as relevant to this case, do not allow for equitable exceptions." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022). However, *Harvey Gulf* is best read as holding "that filing a case in a state court without competent jurisdiction did not toll the statute of limitations for claims brought under the Miller Act," *Jackson v. Astrue*, 506 F.3d 1349, 1358 (11th Cir. 2007), not that the Miller Act's one-year deadline is jurisdictional in the more disciplined sense of delineating a court's authority to hear claims. *See Harvey Gulf*, 573 F.2d at 247 (declining to consider estoppel because the issue was not raised, not because the court lacked the power to do so). Moreover, a contrary reading of *Harvey Gulf* would be clearly irreconcilable with *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006), and subsequent Supreme Court cases remedying varied and once commonplace "drive-by jurisdictional rulings," which the *Arbaugh* Court said "should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)); *see also United States ex rel. Diversified Lenders, LLC v. SureTec Ins. Co.*, No. 3:18-CV-99, 2018 WL 6070340, at *3 (M.D. Ga. Nov. 20, 2018). The Court therefore treats the Miller Act's one-year limitation as a nonjurisdictional deadline to which equitable exceptions presumptively may apply. *See Boechler*, 596 U.S. at 209.

Sauer and Federal Insurance nonetheless argue that no equitable exceptions apply here because Federal Insurance denied United Structures' claims before the Miller Act's limitations period expired. United Structures disputes that its claims were definitively

---

"refer[red] to the conditional nature of the right to sue, not to the jurisdiction of the court itself." *United States v. Fid. & Deposit Co. of Md.*, 813 F.2d 697, 699 (5th Cir. 1987).

denied and argues that Federal Insurance never warned that continuing to participate in the claims process would jeopardize its right of action under the Miller Act. Federal Insurance's relevant communication to United Structures hardly contained a final, unequivocal denial. Rather, Federal Insurance stated that it had "determin[ed] that there is a bona fide dispute as to the amounts owed to United Structures, if any," and invited United Structures to "provide documentation that would warrant [] further investigation of the claim." (Doc. 66-7 at 152). Even still, United Structures fails to present any evidence, argument, or authority showing that it is entitled to tolling. To the extent that United Structures emphasizes that it did not receive an unequivocal denial, such is not required before bringing a Miller Act claim in federal court. United Structures effectively argues that Federal Insurance strung it along for the purpose of inducing delay in satisfying a condition precedent that was altogether illusory. But that only speaks to United Structures' own lack of diligence, and "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984).

To the extent that United Structures argues that it relied on some sort of assurance from Federal Insurance as to the latter's ability to make a claims determination, "traditional equitable tolling principles require that the claimant demonstrate *extraordinary circumstances,* such as fraud, misinformation, or deliberate concealment." *Jackson*, 506 F.3d at 1355. Not one of these factors is established by the evidence cited by United Structures, which simply shows that United pursued its claim with Federal Insurance into May 2023. (*See* Doc. 65-5 at 2–5; Doc. 65-7 at 4:7–7:11); *cf. Gen. Ins. Co. of Am. v. United States ex rel. Audley Moore & Son*, 406 F.2d 442, 444 (5th Cir. 1969) (declining to

toll statute of limitations where surety indicated that it would "take some type of remedial action in seeing that [subcontractor's] claim was investigated and at a further date would advise him of what course of action the [surety] planned to follow in connection with th[e] claim"). Equitable tolling is therefore unwarranted and United Structures' claim is untimely. Sauer and Federal Insurance are entitled to summary Judgment on United Structures' Miller Act counterclaim.

**B. United Structures' Counterclaim for Unjust Enrichment**

Under Louisiana law, "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person" unless "the law provides another remedy for the impoverishment or declares a contrary rule."[5] La. Civ. Code art. 2298. Federal Insurance argues that United Structures' unjust enrichment claim fails because the Miller Act provides the exclusive remedy by which a subcontractor may recover from a surety on a payment bond. Federal Insurance also argues—alongside

[5] The Subcontracts at issue "shall be construed with the laws of the state in which the Project[s are] located." (Doc. 65-2 at 32; Doc. 65-3 at 23). The parties agree that Louisiana law governs United Structure's unjust enrichment claim. Florida's choice-of-law rules confirm their conclusion. *See Innovative Strategic Commc'ns, LLC v. Viropharma, Inc.*, No. 8:11-cv-1838-T, 2012 WL 3156587, at *3, *6–7 (M.D. Fla. Aug. 3, 2012).

Additionally, the Court notes that United Structures titles its counterclaim as one for quantum meruit but alleges and argues that Sauer and Federal Insurance were unjustly enriched. (DC, ¶¶ 38–40; Doc. 65 at 15–19). "[T]here is not a cause of action under Louisiana law for the common law doctrine of *quantum merit*." *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F. Supp. 2d 658, 665 (E.D. La. 2008). "[W]here a plaintiff seeks to employ a quantum meruit theory as a substantive ground for recovery . . . analysis is more properly made under the doctrine of *actio de in rem verso* or unjust enrichment." *Wellmeier v. Lankau*, 424 So. 3d 769, 777–78 (La. App. 3 Cir. 2025) (quotation omitted).

Sauer—that Louisiana law does not recognize unjust enrichment claims where recovery is available under another claim or theory of relief. United Structures responds that, in this case, recovery is not available under another claim because it completed additional work on the barracks that falls outside of the scope of the Subcontracts it entered with Sauer.

The Miller Act "restricts the exercise of the right to sue on [a] payment bond to an action in [a] United States District Court." *Am. Creosote Works, Inc. v. Caltoman Contractors, Inc.*, 160 So. 2d 310, 312 (La. App. 4 Cir. 1964); *see also* 40 U.S.C. § 3133(b)(3)(B). "The jurisprudence is to the effect that the jurisdictional restriction in [§ 3133(b)(3)(B)] refers only to an action brought on the payment bond and not to some other suit not based directly on that bond." *Am. Creosote Works*, 160 So. 2d at 312 (collecting cases). However, a Miller-Act surety's "only involvement" with subcontractors is frequently through the bond itself. *United States ex rel. Howell Crane Serv. v. U.S. Fid. & Guar. Co.*, 861 F.2d 110, 113 (5th Cir. 1988). Thus, when it comes to a federal construction project, a subcontractor's remedy against its surety flows "only by way of a Miller Act suit in federal court." *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976). Louisiana courts routinely police this restriction. *See Bernard Lumber Co. v. Lanier-Gervais Corp.*, 560 So. 2d 465, 467 (La. App. 1 Cir. 1990); *Cajun Constructors, Inc. v. Fleming Constr. Co.*, 951 So. 2d 208, 219–20 (La. App. 1 Cir. 2006).

Here, there is no daylight between United Structures' Miller Act claim and its claim for unjust enrichment—"the only basis for assertion of a claim against [Federal Insurance] is the payment bond obtained under the Miller Act in favor of the United States." *Cajun*

*Constructors*, 951 So. 2d at 220. United Structures fails to expressly contest this conclusion and, despite naming Federal Insurance in the title line of its unjust enrichment count, makes no allegations pertaining to Federal Insurance within the body of the claim. (*See* DC, ¶¶ 37–40).

Likewise, United Structures admits to "bring[ing] its unjust enrichment claim under the same facts as its [contractual] counterclaim[]." *United States v. Cytogel Pharma, LLC*, No. CV 16-13987, 2018 WL 5297753, at *17 (E.D. La. Oct. 25, 2018); (*see* Doc. 65 at 14; Doc. 66 at 14 (United Structures, stating that the two claims "arise from the same operative facts")). However, "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract." *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004). Stated more broadly, "[t]he remedy [for unjust enrichment] is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298. Or, as the Louisiana Supreme Court put it in *Walters v. MedSouth Record Management, LLC*, "[t]he unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided." 38 So. 3d 241, 242 (La. 2010) (quotation omitted). "A plaintiff need not ultimately prevail on another claim for a court to find that it was [provided]. . . . For example, courts have found remedies at law available even when claims based in law were time-barred or never advanced." *United States ex rel. Sun Coast Contracting Servs., LLC v. DQSI, LLC*, No. 13-00297, 2014 WL 7246936, at *4 (M.D. La. Dec. 17, 2014). "Furthermore, the remedy provided by unjust enrichment is precluded where the available remedy at law is against

someone other than the person against whom the claim is presently asserted." *Zaveri v. Condor Petrol. Corp.*, 27 F. Supp. 3d 695, 700 (W.D. La. 2014) (collecting cases).

Here, there is no factual dispute as to the existence or validity of the Subcontracts between Sauer and United Structures. The Subcontracts govern change orders, additional work, and any corresponding payments owed to United Structures. (Doc. 65-2 at 23–24; Doc. 65-3 at 14–15). United Structures conceded as much when it alleged that "Sauer [] breached the Subcontracts by failing to execute and pay for change orders for additional work ordered and/or directed by Sauer." (DC, ¶ 23). The Subcontracts anticipated this possibility and required United Structures "to commence and complete performance" of additional work initiated by Sauer "despite any disagreement concerning compensation for such changed work." (Doc. 65-2 at 24; Doc. 65-3 at 15). Nonetheless, United Structures now seems to argue that it can recover in unjust enrichment insofar as the work it performed fell outside the Subcontracts. This argument simply goes to the scope of the Subcontracts, which control the relationship between the parties as it pertains to compensation for change orders, and which therefore bar United's unjust enrichment claim. *Drs. Bethea, Moustoukas & Weaver LLC*, 376 F.3d at 408; *see also Wilkins v. Hogan Drilling Co.*, 471 So. 2d 863, 867 (La. App. 2 Cir. 1985) ("One cannot recover in quantum meruit where there is an agreed contract between the parties."). Alternatively, to the extent that United Structures argues that it can pursue an unjust enrichment claim because its contractual remedy is potentially insufficient, the sufficiency of United's contractual claim is irrelevant. "It is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x

440, 444 (5th Cir. 2014) (quoting *Garber v. Badon & Ranier*, 981 So. 2d 92, 100 (La. App. 3 Cir. 2008)). Thus, while the Court agrees with United Structures that the record gives rise to a genuine factual dispute regarding the proper approval or denial of change orders, that contractual dispute is immaterial with regard to United's unjust enrichment claim.

Lastly, as noted in *Zaveri*, and as argued by United Structures, "some district courts have permitted unjust enrichment claims to be pled in the alternative . . . in reliance on federal procedural law." 27 F. Supp. 3d at 701. But they have done so "without analyzing the effect of such a ruling on Louisiana substantive law." *Id.* This Court agrees "that Louisiana law, as set out in the Louisiana State Supreme Court's decision in *Walters,* supports the rulings of those federal courts . . . which have held that the availability of another remedy bars a plaintiff's claim for unjust enrichment, regardless of whether the plaintiff prevails in his pursuit of those other remedies," and regardless of whether the alternative claims are based in contract or tort. *Id.* (collecting cases); *see also id.* at 701 n.4; *Cytogel Pharma*, 2018 WL 5297753, at *16 n.218. There may be "exceptions at the pleading stage when the validity of a contract is at issue," *Matrix HVAC, LLC v. Daikin Applied Ams., Inc.*, No. 23-1669, 2023 WL 8701330, at *6 (E.D. La. Dec. 15, 2023), but they are inapplicable here. Sauer and Federal Insurance are therefore entitled to summary judgment on United Structures' counterclaim for unjust enrichment.

**C. United Structures' Counterclaim for Bad Faith Attorney's Fees**

United Structures pleads a counterclaim against Sauer for bad faith attorney's fees under § 13-6-11 of the Georgia Code. Sauer argues that Louisiana law applies to the Subcontracts and that even under Georgia law, § 13-6-11 does not provide an independent cause of action. United Structures seems to agree that Louisiana law

applies and explicitly agrees that § 13-6-11 does not provide it with a cause of action. United therefore requests leave to amend its Amended Counterclaim. However, its request must be made in a motion accompanied by a memorandum of law, not in a responsive filing. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); M.D. Fla. R. 3.01(b); *Fed. Deposit Ins. Corp. v. Paleja*, No. 6:13-cv-1097-Orl, 2014 WL 12617786, at *4 (M.D. Fla. June 26, 2014) ("[A] request for affirmative relief is not properly made when simply included in a response to a motion or other responsive pleading."). In any event, the Court declines to grant leave to amend over one year after the deadline has passed. (*See* Doc. 28 at 1; Doc. 41); *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) ("[I]t is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions.").

**D. United Structures' Counterclaim for Fraud**

United Structures alleges that Sauer fraudulently induced acceptance of the Subcontracts by representing that it would not withhold money on either one of the agreements because of disputes ascribable to the other. Sauer argues that the counterclaim lacks evidentiary support and factual allegations pertaining to its intent to deceive, the latter of which is required under Louisiana law. United Structures responds that federal law applies but argues that it has satisfied the pleading standard no matter which governing law is applied. United Structures likewise argues that sufficient evidence exists to create a material issue of fact as to Sauer's intent to deceive.

"[C]ourts are to undertake a separate choice-of-law analysis for each claim." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 875 n.11 (11th Cir. 2018).

In the Fifth Circuit, "[q]uestions regarding the enforceability or validity of [settlement] agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 650 (5th Cir. 2018) (second alteration in original) (quoting *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984)). United Structures argues that federal law therefore governs its fraud claim. However, it provides no binding support for its proposition, and even if the Fifth Circuit's standard was binding, *Fisk Electric* would nevertheless remain distinguishable. The Court here is not evaluating whether "[Sauer] fraudulently induced [United Structures] into entering a settlement agreement that released [Sauer] from any claims for liability under the Miller Act." *Id.* at 647. Nor is United Structures seeking to "invalidate" the agreement at issue here. *Id.* at 650, 651 (quotation marks omitted). Rather, United is seeking to ratify the agreement through a claim for damages. *Cf. Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) (explaining the "election of remedies" provided by Florida law "[c]onsistent with the majority view": in fraudulent inducement cases, a party may proceed on a theory of "rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract").

Nor do the Subcontracts' choice-of-law provisions control. "[A] choice-of-law provision that by its terms governs only the parties' contractual relationship may not provide the choice-of-law for non-contract claims." *Viridis Corp.*, 721 F. App'x at 875 n.11; *see also Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009). Here, only the Subcontracts themselves are to "be construed with the laws of the state in which the Project[s are] located." (Doc. 65-2 at 32; Doc. 65-3 at 23). Therefore, the

Subcontracts' choice-of-law clauses "do[] not refer to related tort claims or to any and all claims or disputes . . . arising out of the relationship of the parties." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003).

Florida's choice-of-law rules thus govern the law applicable to United Structures' counterclaim for fraudulent inducement. *See id.* at 1301. Under Florida law, fraudulent inducement into a contract sounds in tort, rather than in contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712 (Fla. 5th DCA 1998). "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (quoting Restatement (Second) of Conflict of Laws §§ 145–46 (1971)). "[C]ontacts to be taken into account include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Green Leaf Nursery*, 341 F.3d at 1301 (quotation omitted). Here, the proper application of these factors is well beyond the record. While the barracks projects in question were physically located in Louisiana, Sauer is a citizen of Florida and Pennsylvania with its principal place of business in Florida, and United Structures is a citizen of Georgia with its principal place of business in Georgia. (*See* Doc. 9 at 2–3; Doc. 17 at 2). Neither party alleges or presents evidence of where precontractual negotiations took place, and the record is similarly unclear as to where the contract was signed and where United Structures'

alleged injuries occurred. *Cf. Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219, 1226–27 (M.D. Fla. 2007) (finding that "Georgia ha[d] the most significant relationship to the claims" because the "majority of the negotiation . . . took place [there]" and because one party was based there while the other party "worked out of [its] Georgia office"). Given these shortcomings, the Court cannot determine, as a matter of law, which state's framework governs. However, because Florida, Georgia, and Louisiana law all require allegations of an intent to deceive,[6] the Court may proceed to evaluate Sauer's pleading arguments as they relate to that element. *See Blum v. Morgan Guar. Tr. Co. of N.Y.*, 709 F.2d 1463, 1466 (11th Cir. 1983) ("A motion for summary judgment may be made solely on the basis of the complaint, in which case the motion is to be treated as the functional equivalent of a motion to dismiss for failure to state a claim . . . .").

As to the sufficiency of its allegations, United Structures appears to argue that its counterclaim alleges intentional deception because "Sauer knew United was reliant []on," yet "had no intent to comply []with," Sauer's representation that it would not withhold money on one subcontract because of disputes flowing from the other. (Doc. 65 at 24). For support, United Structures cites to the following allegations in its fraud counterclaim:

[6] *See Palumbo v. Moore*, 777 So. 2d 1177, 1179 (Fla. 5th DCA 2001) ("To state a cause of action for fraud in the inducement, a plaintiff must allege . . . intent by the maker of the [false] statement that the representation induce another to rely and act on it . . . ."); *Moore v. Humble*, 890 S.E.2d 28, 32 (Ga. Ct. App. 2023) (stating that "scienter" and "intention to induce the plaintiff to act" are elements of fraud and reversing denial of summary judgment because "Humble [could not] show that Moore induced her to agree to marry him with a present intent to deceive her at the time of the engagement"); *Sanga v. Perdomo*, 167 So. 3d 818, 821 (La. App. 5 Cir. 2014) ("The specific intent to deceive is a necessary element of fraud, and fraud cannot be predicated upon mistake or negligence.").

46.

> Before execution of the Subcontracts, United relied on the representations of Sauer that it would not withhold money due on one contract because of disputed issues on the other.

47.

> Sauer has refused to pay United under the theory it will 'off-set' any amount owed to United for its alleged damages.

(DC, ¶¶ 46–47). These allegations do not adequately plead an intent to deceive under any standard of law.

Under Florida law, "fraud cannot be predicated on a mere promise not performed" except "where it can be shown that the promissor had a specific intent not to perform the promise at the time the promise was made." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 809 n.12 (11th Cir. 2010) (quotation omitted). Here, the Amended Counterclaim contains no allegations that Sauer's representations were false when made or made with the intent to deceive or defraud. *Cf. id.* (finding allegations of intent); *Noack v. Blue Cross & Blue Shield of Fla., Inc.*, 742 So. 2d 433, 435 (Fla. 1st DCA 1999) (same).

Georgia law likewise follows "[t]he general rule [] that actionable fraud cannot be predicated upon . . . a mere failure to perform promises made" and incorporates the "well-recognized exception . . . that a promise made without the present intention to perform can create a cause of action." *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1340 (N.D. Ga. 2008) (quotation omitted) (collecting cases and statutory authority). This "scienter" element is insufficiently pleaded by conclusory allegations of a lack of intent to perform.

*Eckart v. Allstate Northbrook Indem. Co.*, No. 23-10753, 2023 WL 8651035, at *3 (11th Cir. Dec. 14, 2023). Here, because United Structures fails to allege scienter in the first instance, it goes without saying that it likewise "pled no facts to support a conclusion that [Sauer] intentionally misrepresented" anything. *Id.* at *4. So too under Louisiana law. *See Goux Enters. v. Indian Harbor Ins. Co.*, 741 F. Supp. 3d 478, 487 (E.D. La. 2023) (collecting cases).

Nor has United Structures presented evidence sufficient to withstand summary judgment. While it cites to the deposition of Sauer's corporate representative as support for the argument that Sauer had no present intent to follow-through on its disclaimer, the cited testimony simply offers no support for that proposition. (*See* Doc. 65-4 at 114–117). Sauer is therefore entitled to summary judgment on United Structures' fraud counterclaim.[7]

**E. Sauer's Claims for Breach of Performance Bond**

Sauer alleges that sureties Western Surety and Great Midwest breached their performance bond agreements. "Generally, a suretyship contract is an accessory promise by which the surety binds himself to fulfill the obligations of the principal, should the principal fail to perform" the obligations required by the primary contract. *Nicholson & Loup, Inc. v. Carl E. Woodward, Inc.*, 596 So. 2d 374, 390 (La. App. 4 Cir. 1992).[8] A

---

[7] Because Sauer is entitled to summary judgment on United Structures' counterclaims for fraud and bad faith attorney's fees, Sauer's Motion for Judgment on the Pleadings for Counts Four and Five of the Amended Counterclaim (Doc. 55) will be denied as moot.

[8] The parties and the Court agree that Louisiana law governs the Court's inquiry into the language of the bond agreements, as the bonds expressly incorporate by

performance bond guarantees that the principal—in this instance, United Structures—will perform its work under the primary contract—or in this instance, the Subcontracts—by holding the surety liable for the principal's breach. *See Congregation of St. Peter's Roman Cath. Church of Gueydan v. Simon*, 497 So. 2d 409, 413 (La. App. 3 Cir. 1986); *L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 762 So. 2d 1223, 1236 (La. App. 1 Cir. 2000). "Bonds often require the principal to be in default and to be declared so." 5 Bruner & O'Connor Construction Law § 12:74 (2026).

Western Surety and Great Midwest argue that Sauer failed to provide them with notice of United Structures' default, which they contend was a mandatory condition precedent to suit. With respect to Western Surety, Sauer agrees that it did not provide pre-suit notice of United Structures' default but argues that the lawsuit itself provided proper notice insofar as it was required. With respect to Great Midwest, Sauer argues that it did provide notice of United's default. And in both instances, Sauer denies that the performance bonds establish notice or a declaration of default as a condition precedent to suit. In relevant part, the performance bonds provide:

> PRINCIPAL DEFAULT. Whenever the Principal [(United Structures)] shall be, and is declared by the Obligee [(Sauer)] to be in default under the Contract, with [Sauer] having performed its obligations thereunder, the Surety may promptly remedy the default, or shall promptly [complete the contract, obtain new contractors, or pay Sauer.]
>
> DEFAULT NOTICE. Whenever the Principal [(United Structures)] shall be, and is declared by the Obligee [(Sauer)] to be in default under the Contract, with [Sauer] having performed its obligations thereunder, and after having given notice to the Surety regarding such default (including via carbon copy), [Sauer] may undertake to remedy the default pursuant to any of its

---

reference the Subcontracts, and hence the Subcontracts' choice-of-law provisions. *See Rouse Constr., Inc. v. Transamerica Ins. Co.*, 750 F.2d 1492, 1493 n.4 (11th Cir. 1985).

> rights under the Contract until such time as the Surety has taken or committed to take action to remedy [United Structures'] default, or if Surety takes no action or issues a denial, until such time as [United Structures'] contractual performance is completed, with no prejudice to [Sauer's] rights under this Bond, including for reimbursement of all additional costs associated with [United Structures'] default up to the penal amount thereof.

(Doc. 63-1 at 5–6, Doc. 64-1 at 12–13). Thus, in more relevant part, "[w]henever [United Structures] . . . is declared by [Sauer] to be in default," "the Surety may promptly remedy the default." (*E.g.*, Doc. 63-1 at 5). Additionally, "[w]henever [United Structures] . . . is declared by [Sauer] to be in default," "[Sauer] may undertake to remedy the default pursuant to any of its rights under the Contract." (*Id.* at 6). The Eleventh Circuit has recognized that this is "'standard' language" in surety agreements and "require[s] notice to first be given." *CC-Aventura, Inc. v. Weitz Co.*, 492 F. App'x 54, 56 (11th Cir. 2012); *see also id.* at 55 n.1. Further emphasizing the order of operations is language permitting Sauer to remedy United Structures' default only "*after* having given notice to [either Western Surety or Great Midwest] regarding such default." (Doc. 63-1 at 6; Doc. 64-1 at 13 (emphasis added)).

Sauer argues that the language of the bond agreements is too permissive to establish a condition precedent. However, as a general matter, a "performance bond surety may be discharged by the obligee's [(in this case, Sauer's)] untimely or insufficient notice of default or termination." 5 Bruner & O'Connor Construction Law § 12:74 (2026); *see also L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 109–11 (5th Cir. 1994) (applying Florida law). One might presume that the general rule applies toward a bond with an explicit "DEFAULT NOTICE" provision. Regardless, courts applying Louisiana law have found identical language to condition suit upon the prime contractor's

declaration of the subcontractor's default. *See DQSI, L.L.C. v. APC Constr., LLC*, 347 So. 3d 928, 932, 934–35 (La. App. 1 Cir. 2022); *84 Lumber Co. v. Paschen*, No. 12-1748, 2017 WL 467679, at *6–7 (E.D. La. Feb. 3, 2017). The *DQSI* court explained that "[b]efore a declaration of default, sureties face possible tort liability for meddling in the affairs of their principals," and that "[a]fter a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee." 347 So. 3d at 935. Accordingly, "[a] declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language." *Id.* The court concluded that such a declaration "must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond."[9] *Id.* Because such notice had not been issued to the surety, the court affirmed its dismissal from the case. *Id.* at 936. Obviously, then, the lawsuit itself did not suffice as a declaration.

As to Western Surety, Sauer cites to no evidence concerning a declaration of default. Western Surety, meanwhile, testified that it never received any written communication from Sauer or any other party concerning United Structures' performance of work on Subcontract 2273. (Doc. 63-1 at 4; *see also id.* at 1–2). Sauer's testimony seems to support that account and otherwise fails to create a genuine dispute of material

[9] Here, as Sauer points out, the bond agreements expressly dispensed with the requirement that the relevant Subcontract be terminated prior to a declaration of default. (*E.g.*, Doc. 64-1 at 13). That the parties apparently deemed it necessary to include such language only reinforces the default rule as stated by the *DQSI* court.

fact.[10] Therefore, Western Surety is entitled to summary judgment on Sauer's claim for breach of performance bond.

As to Great Midwest, Sauer argues that it attempted to provide a notice of default. Sauer also seems to argue that there exists an evidentiary inference that Great Midwest was notified. Sauer apparently sent a declaration of default to United Structures by way of an e-mail titled "notice of default and backcharge," dated January 31, 2023, which was copied to an errant address for Great Midwest. (Doc. 68-2 at 6–7; *see also* Doc. 68-1 at 2:25–3:5). There is no evidentiary inference that Great Midwest received that e-mail or its attached declaration of default, which does not appear in the record. In fact, in response to being asked about the e-mail and whether Sauer notified Great Midwest of United's default, Sauer's corporate representative testified, "Not that I'm aware of." (Doc. 68-1 at 3:3–9). Likewise, United Structures denies knowledge of apprising its sureties of a dispute with Sauer. (Doc. 68-3 at 3:11–4:5).

Citing to "Kahn Dep. Ex. 4," Sauer nonetheless argues that an e-mail notification made it into Great Midwest's possession. Some e-mails from Sauer—including several from January 2023—were eventually added to Great Midwest's claim file for the dispute

[10] Sauer's corporate representative testified that he "believe[d Sauer] thought" it provided notice to Western Surety regarding United's alleged default, that he "believe[d Sauer] expected United to have made [Western Surety] aware" of the default, that he "d[id] not believe" Sauer had actually provided notice to Western Surety at all, that he "believe[d] it was [] determined after the fact that [notice] may have been overlooked," and finally, that he "believe[d notice] was eventually provided to Western Surety." (Doc. 68-1 at 2:8–3:19). Sauer does not cite to this testimony, which was attached to its Response to Great Midwest's Motion for Summary Judgment. Even if this evidence had been attached to the correct Motion, it tends to support Western Surety's account of receiving no notice. Moreover, a witness's statement of belief is insufficient to create a genuine dispute of material fact. *See Pace v. Capobianco*, 283 F.3d 1275, 1278–79 (11th Cir. 2002) (collecting cases).

over United Structures' performance bond on Subcontract 2387/2389. (Doc. 68-2 at 3–5). In one of the e-mails, Sauer informed United Structures that it would be hiring a supplemental contractor to complete United's work and filing a claim with United's surety. (*Id.* at 8). Great Midwest does not appear on the e-mails "To:" or "Cc:" lines. (*Id.*). However, Great Midwest testified that it acquired the e-mail, along with several others in a chain of communication between Sauer and United, after opening a claim file on their dispute in March 2023. (*Id.* at 3–5; *see also id.* at 8–20). This lawsuit was initiated in September 2024. Viewed in the light most favorable to Sauer, this evidence presents a reasonable inference that Sauer declared United Structures to be in default, leading Great Midwest to open a claim file on the bond, all prior to the initiation of this litigation. Likewise, the evidence suggests that prior to the initiation of this litigation, Great Midwest received an e-mail in which Sauer stated without equivocation that it would be filing a claim with Great Midwest on behalf of United's alleged refusal and failure to perform work on Subcontract 2387/2389. Because the relevant payment bond merely required that Sauer "give[] notice to the Surety regarding [its declaration of United's] default (including via carbon copy)," (Doc. 64-1 at 13), a reasonable jury could conclude that Sauer provided sufficient notice. Great Midwest's Motion for Summary Judgment will therefore be denied.

## IV. CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Sauer's Motion for Partial Summary Judgment (Doc. 60) is **GRANTED**. Summary judgment is granted in favor of Sauer as to Counts Two, Three, Four, and Five of the Amended Counterclaim (Doc. 42).

2. Sauer's Motion for Judgment on the Pleadings for Counts Four and Five of the Amended Counterclaim (Doc. 55) is **DENIED as moot**.
3. Federal Insurance's Motion for Summary Judgment (Doc. 61) is **GRANTED**. Summary judgment is granted in favor of Federal Insurance as to Counts Two and Three of the Amended Counterclaim (Doc. 42).
4. Western Surety's Motion for Summary Judgment (Doc. 63) is **GRANTED**. Summary judgment is granted in favor of Western Surety as to Count Three of the Complaint (Doc. 1).
5. Western Surety's Motion for Summary Judgment (Doc. 62) is **DENIED as moot**.
6. Great Midwest's Motion for Summary judgment (Doc. 64) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on August 27, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record